Judy GEISLER, et al., Appellants,

v.

MID–CENTURY INSURANCE
COMPANY, Appellee.

No. C14–85–00657–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 8, 1986.

Rehearing Denied June 5, 1986.

Larry J. Doherty, Jimmy Williamson, Houston, for appellants.

Clifford J. Vacek, Jeffrey Hoffman, Houston, for appellee.

Before JUNELL, DRAUGHN and EL-LIS, JJ.

## OPINION

JUNELL, Justice.

Judy, Michael David, and Melissa Ann Geisler, the wife and children of the deceased Alfred Geisler, appeal a take-nothing judgment in favor of Mid-Century Insurance Company. Appellants sued Mid-Century to recover $100,000 in insurance proceeds from an underinsured motorist liability policy. In their first five points of error, the appellants argue that under Tex. Ins.Code Ann. § 5.06–1 Mid-Century had an affirmative duty to offer its insured, Alfred Geisler, underinsured motorist benefits in excess of the statutorily required minimum coverage, and absent such an offer was liable for coverage up to the limits of the bodily injury liability limits of Geisler's policy. Appellants contend in their sixth and seventh points of error that the trial court erred in denying recovery of underinsured motorist coverage benefits and pre-judgment interest thereon. We affirm.

Alfred Geisler died as a result of injuries sustained in an automobile accident. When the accident occurred, Geisler was driving a car owned by his employer Brown & Root and insured by Highlands Insurance Company. Geisler had a personal automobile liability policy with underinsured motorist coverage limits of $10,000 per person and $20,000 per occurrence from appellee Mid-Century Insurance Company.

The negligence of the driver of the other automobile was found to have caused the accident. She was covered by an automobile liability insurance policy with liability limits of $10,000 per person and $20,000 per occurrence. At a trial on stipulated facts, appellants took a judgment against the other driver for the amount of $210,-000. The other driver's insurance carrier paid its policy limits of $10,000. Brown & Root's insurer, Highlands, settled an undisclosed claim with appellants for $100,000. Appellants sought to collect another $100,-000 from Alfred Geisler's insurer Mid-Century.

The stipulated facts disclosed that Geisler's policy with Mid-Century provided liability coverage with limits of $100,000 per person/$300,000 per occurrence and un/underinsured motorist coverage with limits of $10,000 per person/$20,000 per occurrence, that Mid-Century had higher un/underinsured coverage available and would have increased coverage had Geisler so requested, that there was no evidence to show Geisler had requested higher limits or that Mid-Century had explained to him that such higher limits were available, and that Mid-Century did not obtain a written rejec-

tion of un/underinsured motorist coverage from Geisler.

Tex.Ins.Code Ann. § 5.06–1 entitled "Uninsured or Underinsured Motorist Coverage" provides:

(1) No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act) covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

The maximum and minimum amount of un/underinsured coverage available is set in Section 3, Article 5.06–1. Minimum coverage is set by the Texas Motor Vehicle Safety-Responsibility Act. At the time of Geisler's death the minimum was $10,000 per person/$20,000 per occurrence. Maximum coverage may not be greater than the bodily injury liability coverage in the insured's policy. Section 1 provides that the coverages required under Article 5.06–1 are not applicable if the insured rejects them in writing.

Appellants assert that because Mid-Century did not obtain a written rejection of coverage from Alfred Geisler and because there is no evidence that Mid-Century ever offered Geisler higher limits of un/underinsured motorist coverage, the maximum allowable coverage should be read into the policy as a matter of law. Where there is no signed rejection of un/underinsured motorist coverage, such coverage exists as a matter of law. *Employers Casualty Company v. Sloan*, 565 S.W.2d 580 (Tex.Civ. App.—Austin 1978, writ ref'd n.r.e.). The question presented in this case is whether the coverage imposed in the absence of a written rejection will be the statutory minimum or maximum or some amount in between.

In points of error one through five appellants rely on the language of Tex.Ins.Code Ann. article 5.06–1, section 3 for the proposition that appellee had an affirmative duty to offer higher limits of underinsured motorist coverage to the deceased. Article 5.06–1, section 3 states:

The limits of liability for bodily injury, sickness, or disease, including death, shall be offered to the insured in amounts not less than those prescribed in the Texas Motor Vehicle Safety-Responsibility Act and such higher available limits as may be desired by the insured, but not greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

Appellants claim the language in Article 5.06–1, section 3 requiring underinsured motorist coverage "shall be offered in such higher limits as may be desired" imposes an affirmative duty on insurance companies to make its insured aware that higher levels of coverage are available.

■ Appellants assert that under Tex. Ins.Code Ann. Article 5.06–1 and its corollary, Texas Insurance Board Rule 18, appellee had an affirmative duty to obtain a signed rejection of higher underinsured benefits from Geisler and to offer him underinsured motorist coverage up to the maximum amount of the liability policy. We reject appellants' arguments.

Geisler's policy provided the statutorily required minimum underinsured motorist coverage. The parties stipulated that had Geisler requested higher limits of coverage such coverage would have been provided but that no evidence exists he ever requested higher limits of coverage. We find appellee had no duty under Tex.Ins.Code Ann. article 5.06–1 to affirmatively offer or obtain a written rejection of underinsured motorist insurance in excess of the statutorily mandated minimum. Article 5.06–1, section 1 states "The coverage required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing ..." Section 1 mandates insurers obtain written rejections only for the "coverages required" under Tex.Ins.Code Ann. Article 5.06–1. Article 5.06–1 requires coverage for un/underinsured motorist benefits in at least the statutory minimum.

Under Article 5.06–1, appellee had to either provide its insured with at least the statutorily required minimum underinsured motorist coverage or to obtain a written rejection of underinsured motorist coverage. Appellee provided Geisler with the minimum coverage; in so doing appellee was released from its obligation to obtain from Geisler a written rejection of underinsured motorist benefits in any amount.

In cases where insurance policies have failed to provide any amount of un/underinsured motorist coverage, Texas courts have uniformly read the statutory required minimum amount of coverage into the policy. *See Allstate Insurance Company v. Hunt*, 469 S.W.2d 151 (Tex.1971); *Employers Casualty Company v. Sloan, supra; Guarantee Insurance Company of Texas v. Boggs*, 527 S.W.2d 265 (Tex.Civ.App.—Amarillo 1975, writ dism'd); *Greene v. Great American Insurance Company*, 516 S.W.2d 739 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.).

In support of their argument appellants rely on numerous cases from other states. These out-of-state cases do not aid appellants' argument for two reasons. First, the foreign statutes differ from the Texas statute in their definitions of required minimum underinsured motorist coverage. Second, the out-of-state decisions uniformly follow the Texas rule of reading the statutory minimum required coverage into policies from which such coverage has been excluded.

We find that since appellee provided the mandatory minimum underinsured motorist coverage, it was not required to obtain a signed rejection of underinsured motorist benefits from Geisler. Appellee had no duty to make an affirmative offer of higher limits of underinsured motorist coverage to Geisler and does not owe appellants underinsured motorist benefits in the $100,000 primary liability amount of the policy. We overrule appellant's points of error one through five.

In point of error six, appellants contend appellee, together with other insurance carriers involved in this case, was liable for appellants damages up to the limits of the insurance policy. Appellants claim that under *American Motorists Insurance Company v. Briggs*, 514 S.W.2d 233 (Tex.1974) and *American Liberty Insurance Company v. Ranzau*, 481 S.W.2d 793 (Tex.1972), the insurers are jointly and severally liable for the full amount of appellants' damages. In the *Briggs* and *Ranzau* cases *uninsured* drivers caused injuries to persons covered by two separate insurance policies containing un/underinsured motorist provisions. In both *Briggs* and *Ranzau*, the supreme court held the insurers jointly and severally liable up to the amount of damages sustained by the insureds.

■ Neither *Briggs* nor *Ranzau* applies in the instant case because the driver of the other car was neither uninsured nor underinsured at the time of the accident. When a tortfeasor carries liability insurance in an amount equal to the underinsured motorist coverage carried by the policy holder the tortfeasor is not underinsured by definition and the policy holder is not entitled to recover underinsured motorist benefits. *Muller v. Allstate Insurance Company*, 627 S.W.2d 775 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). The

parties stipulated that the other driver carried liability insurance in the amount of $10,000 per person/$20,000 per occurrence. Since her liability coverage equaled Geisler's underinsured motorist coverage, the other driver was not an underinsured motorist; appellants were not entitled to recover in this case under the underinsured motorist benefits provision in Geisler's policy. Even if appellants were entitled to recover underinsured motorist benefits, the amount of the settlement they made with the other driver's liability insurance carrier ($10,000) would be deducted from the amount of appellee's underinsured motorist liability ($10,000) and appellee would still not owe appellants anything. *See American General Fire & Casualty Company v. Oestreich*, 617 S.W.2d 833 (Tex.Civ.App.—Eastland 1981, no writ). We overrule appellant's sixth ground of error.

Appellants' seventh ground of error seeks to recover prejudgment interest from appellees. Since we have denied appellant's claim against appellee, no prejudgment interest is recoverable. We overrule appellants' seventh point of error. The judgment is affirmed.