**David TATUM, Appellant,**

v.

**MID–CENTURY INSURANCE COMPANY, Appellee.**

No. B14–86–752–CV.

Court of Appeals of Texas, Houston (14 Dist.).

March 26, 1987.

Rehearing Denied April 23, 1987.

Mark A. Salvato, Houston, for appellant.

Mike Johanson, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, David Tatum ("Tatum"), sued his automobile insurance carrier, appellee, Mid-Century Insurance Company ("Mid-Century"), to recover damages arising from injuries sustained in a motor vehicle collision with an automobile driven by Karen Gilpin. The trial court granted summary judgment in favor of Mid-Century. After obtaining a severance of his cause of action from the original suit against Gilpin and Mid-Century, Tatum now appeals the order granting summary judgment in favor of Mid-Century. We affirm.

Tatum concedes in his sole point of error that there are no genuine issues of material fact precluding summary judgment. He contends, however, that the trial court erred in granting Mid-Century's motion for summary judgment because the sale of underinsured motorist coverage in an amount equal to the statutory minimum limit constitutes constructive fraud and is injurious to the public interest.

The facts of the case are undisputed. Tatum was the driver of an automobile rear-ended by a vehicle driven by Karen Gilpin in Houston, on August 28, 1984. Tatum sued Gilpin for injuries sustained in the accident. He subsequently joined his auto insurer, Mid-Century, as a party defendant, filing suit pursuant to the underinsured motorist provision of his policy.

Gilpin's insurance policy contained liability limits of $15,000 per person/$30,000 per accident. Tatum's policy with Mid-Century provided uninsured/underinsured motorist coverage in the amounts of $15,000 per person/$30,000 per accident. Tatum had no other uninsured/underinsured motorist coverage in effect the date of the accident.

Mid-Century moved for summary judgment on the basis that the vehicle driven by Gilpin was not an "underinsured motor vehicle" as statutorily defined; hence, Tatum had no cause of action against Mid-Century pursuant to the underinsured motorist coverage of his policy. We agree.

The Texas Insurance Code defines an "underinsured motor vehicle" as:

(b) [A]n insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, *an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.*

Tex.Ins.Code Ann. art. 5.06–1(2)(b) (Vernon 1981) (emphasis added).

The Texas Motor Vehicle Safety-Responsibility Act mandates the minimum limits permitted for underinsured motorist coverage. At the time of the accident the liability limits were as follows:

[E]ffective January 1, 1984, Fifteen Thousand Dollars ($15,000) because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, Thirty Thousand Dollars ($30,000) because of bodily injury to or death of two (2) or more persons in any one accident, and Fifteen Thousand Dollars ($15,000) because of injury to or destruction of property of others in any one accident....

Tex.Rev.Civ.Stat.Ann. art. 6701h, § 5(c)6 (Vernon Supp.1987).

■ Tatum does not contest the fact that the underinsured liability insurance minimums applicable to his vehicle and the one driven by Gilpin were equal. He grants in his brief that the vehicle driven by Gilpin was not "underinsured" by statutory definition, since her liability coverage was not less than the minimums stated in the underinsured coverage provision of Tatum's policy ($15,000). The trial court thus correctly held Tatum had no valid claim for underinsured benefits pursuant to his policy with Mid-Century. We find summary judgment was properly granted for this reason alone. *Geisler v. Mid-Century Insurance Co.,* 712 S.W.2d 184, 187 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r. e.); *Muller v. Allstate Ins. Co.,* 627 S.W.2d

775, 777 (Tex.App.-Houston [1st Dist.] 1981, no writ).

However, we will address Tatum's claim that summary judgment was improper because Mid-Century's sale of underinsured motorist benefits constitutes constructive fraud and is injurious to the public interest. Tatum argues in support of his position that a policyholder injured by a motorist who is insured in the minimum statutory amount can never collect benefits pursuant to his policy's underinsured motorist coverage. Tatum asserts the aim of the statutory provisions is thus necessarily subverted.

■ In so maintaining, Tatum misapprehends the legislative purpose of the applicable provisions of the Insurance Code and the Motor Vehicle Safety-Responsibility Act. Underinsured motorist coverage was established to provide an insured party injured by a motorist carrying insurance (1) in an amount less than the statutory minimum, or (2) reduced by payments to other claimants in the same accident to less than the statutory minimum, with no less coverage than the insured party would have received had the tortfeasor been fully insured or fully covered in relation to plaintiff's underinsured motorist coverage under the law. *Infante v. Texas Farmers Ins. Co.*, 640 S.W.2d 321, 323 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.); *Muller v. Allstate Ins. Co.*, 627 S.W.2d at 777. Tatum ignores two common situations where collecting underinsured benefits is possible: (1) the reduction of liability coverage below the statutory minimum by multiple claimants; and (2) an accident involving an out-of-state motorist with less than the statutory minimum coverage. *See American General Fire & Casualty Co. v. Oestreich*, 617 S.W.2d 833, 834 (Tex.Civ.App.—Eastland 1981, no writ).

■ We find the legislative purpose of the applicable Insurance Code and Motor Vehicle Safety-Responsibility Act provisions to be unambiguous and clearly expressed. We will not attempt to interpret or construe the law beyond the language of the statutes. *Lumbermen's Underwriters v. State Bd. of Insurance*, 502 S.W.2d 217,

219 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.). Any alleged statutory defects or deficiencies must be corrected by the legislature; courts may not formulate public policy. *Armstrong v. Harris County*, 669 S.W.2d 323, 328 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Montanye v. TransAmerica Ins. Co.*, 638 S.W.2d 518, 521 (Tex.App.-Houston [1st Dist] 1982, no writ).

■ There is no merit in Tatum's position that Mid-Century's statutory compliance constitutes constructive fraud. Constructive fraud applies to those transactions the law declares to be fraudulent, irrespective of intent, because they are opposed to statute or public policy. The perpetrator of constructive fraud breaches a legal or equitable duty without respect to moral guilt. 41 Tex.Jur.3d *Fraud and Deceit* § 4 (1985); *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964).

■ Mid-Century complied exactly with the statutory provisions. It owed no duty to Tatum, its insured, to offer benefits in excess of the statutory minimum; and no duty was breached. *See Geisler v. Mid-Century Ins. Co.*, 712 S.W.2d at 186. We hold Mid-Century's sale of underinsured motorist benefits did not constitute constructive fraud and was not injurious to the public interest.

The trial court properly granted summary judgment in favor of Mid-Century. Tatum's single point of error is overruled.

The judgment of the trial court is affirmed.