Frederick **CRITCHFIELD** and Claudia Critchfield, Individually and as Personal Representatives of the Estate of Eric Critchfield, Appellants,

v.

Dennis E. **SMITH**, Appellee.

No. 12–03–00017–CV.

Court of Appeals of Texas, Tyler.

April 30, 2004.

Rehearing Overruled June 22, 2004.

Georganna L. Simpson, Jeff Forrest Smith, for appellant.

Gregory R. Ave, Touchstone, Bernays, Johnson, Beall, Smith & Stollenwerck, L.L.P., Dallas, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## *OPINION*

DIANE DeVASTO, Justice.

In three issues, Frederick Critchfield and Claudia Critchfield, individually and as personal representatives of the estate of Eric Critchfield ("the Critchfields"), appeal the trial court's grant of partial summary judgment and bifurcation of liability and damage issues in their lawsuit against Dennis E. Smith ("Smith"). We affirm in part, and reverse and remand in part.

## BACKGROUND

In July 1993, the Critchfields contacted Smith for advice about insuring their home and automobiles. Specifically, Mr. Critchfield wanted the "maximum" amount of underinsured/uninsured motorist ("UM/UIM") coverage available to him. After discussing their options, the Critchfields purchased an automobile insurance policy from Nationwide Insurance Company ("Nationwide") that provided $500,000.00 in bodily injury liability coverage and $100,000.00 per person in UM/UIM bodily injury coverage. According to Mr. Critchfield, Smith advised him that the $100,000.00 in UM/UIM coverage was an appropriate amount because Mr. Critchfield was covered by a major medical insurance policy. At no time did Smith inform him that he could have acquired $500,000.00 in UM/UIM coverage. From 1993 to 1999, Mr. Critchfield continued to renew his automobile insurance policy with $500,000.00 in liability coverage and $100,000.00 in UM/UIM coverage.

On December 20, 1999, the Critchfield's son, Eric, was injured during an automobile accident while riding as a passenger in another vehicle. On December 28, Eric died as a result of those injuries. In August 2000, Nationwide paid the Critchfields the limits of their UM/UIM coverage. Sometime after Nationwide paid the Critchfields, the Critchfields' attorney told them that Smith could have and should have sold them a policy with a $500,000.00 UM/UIM limit that was equal to the limit of personal liability coverage on their automobile insurance policy.[1]

On December 19, the Critchfields sued Smith, contending that Smith was negligent in failing to 1) adequately and properly advise them on the appropriate amount of UM/UIM coverage, 2) provide them with UM/UIM coverage in an amount equal to the $500,000.00 limit of personal liability coverage, and 3) increase their UM/UIM coverage at each policy renewal date from 1992 or 1993 to December of 1999. The Critchfields also alleged breach of contract, breach of fiduciary duty, and negligent misrepresentation causes of action, including the recovery of reasonable attorney's fees.

On February 4, 2002, Smith filed a motion for partial summary judgment on the Critchfield's negligence, breach of contract, and breach of fiduciary duty claims. The Critchfields responded to the motion on March 7. That same day, the Critchfields amended their original petition, adding causes of action for negligence per se and violations of the Deceptive Trade Practices Act (DTPA).

On April 10, the trial court granted Smith's motion as it pertained to the Critchfield's negligence, negligence per se, and breach of contract claims; however, it denied summary judgment on the breach of fiduciary duty claim. On April 22, the Critchfields filed a motion to reconsider the trial court's April 10 ruling, and on April 29, Smith filed a motion to exclude the Critchfields' experts on damages and

---

1. Section 3 of article 5.06–1 of the Texas Insurance Code limits UM/UIM coverage to an amount that is not less than the statutory minimum prescribed in the Texas Motor Vehicle Safety–Responsibility Act "and such higher available limits as may be desired by the insured, but not greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy." TEX. INS. CODE ANN. art. 5.06–1(3) (Vernon Supp.2004).

The minimum amounts of liability insurance coverage a person must carry are 1) $20,000.00 in bodily injury to or death of one person in one accident and 2) $40,000.00 in bodily injury to or death of two or more persons in one accident, subject to the $20,000.00 minimum for bodily injury to or death of one of the persons. TEX. TRANSP. CODE ANN. § 601.072 (Vernon 1999).

negligent misrepresentation. On May 16, the trial court granted the Critchfields' motion to reconsider, but only on their negligent misrepresentation claim. The trial court also granted Smith's motion to exclude the Critchfields' damage experts but denied the motion with regard to the negligent misrepresentation experts. On June 26, the trial court, *sua sponte*, bifurcated the issues of Smith's liability and any resulting damages and also ordered that the same jury hear both trials.

The trial began on July 22, and the jury returned a verdict on July 26. The jury answered "no" when asked whether Smith had 1) engaged in any false, misleading or deceptive act or practice, 2) engaged in any unconscionable action or course of action, 3) made a negligent misrepresentation, or 4) failed to comply with his fiduciary duty to the Critchfields. The jury also found that the Critchfields' own negligence served as the proximate cause of any damages they sustained.[2]

On October 4, the trial court entered a take-nothing judgment in Smith's favor. On November 4, the Critchfields filed motions for new trial and judgment notwithstanding the verdict, which the trial court overruled. This appeal followed.

### REVIEW OF THE TRIAL COURT'S PARTIAL SUMMARY JUDGMENT RULING

On appeal, the Critchfields contend that the trial court erred when it granted Smith a partial summary judgment on their negligence, negligence per se, and breach of contract causes of action. They also argue that the trial court committed reversible error when it bifurcated the liability and damage issues on its own motion.

2. The jury attributed 75% of the negligence to Frederick Critchfield and 25% to Claudia

### Standard of Review

In reviewing a 166a(c) motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*See Nixon*, 690 S.W.2d at 548–49. For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). A movant must either negate at least one essential element of the non-movant's cause of action, or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *see also MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the non-movant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evi-

Critchfield.

dence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952). The only question is whether or not an issue of material fact is presented. *See* TEX.R. CIV. P. 166a(c).

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX.R. CIV. P. 166a(c). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action as a matter of law. *Lee v. Lee,* 43 S.W.3d 636, 640 (Tex. App.-Fort Worth 2001, no pet.). This court can affirm a summary judgment only upon the grounds raised in the motion for summary judgment. *Id.*

### Negligence

The Critchfields contend that Smith violated both common-law and statutory duties he owed to the Critchfields by failing to offer them UM/UIM coverage in an amount equal to their personal liability coverage. Smith counters that he owed neither a common-law nor a statutory duty to offer any amount over the statutory minimum.

Negligence consists of three essential elements: 1) a legal duty owed by one person to another, 2) a breach of that duty, and 3) damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Duty is the threshold inquiry. *Id.* When no duty exists, there can be no negligence.

*Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975).

In Texas, an insurance agent owes the following common-law duties to a client when procuring insurance: 1) to use reasonable diligence in attempting to place the requested insurance, and 2) to inform the client promptly if unable to do so. *Moore v. Whitney–Vaky Ins. Agency,* 966 S.W.2d 690, 692 (Tex.App.-San Antonio 1998, no pet.) (citing *May v. United Servs. Ass'n of America,* 844 S.W.2d 666, 669 (Tex.1992)). No legal duty exists on the part of an insurance agent to extend the insurance protection of his customer merely because the agent has knowledge of the need for additional insurance of that customer, especially in the absence of evidence of prior dealings where the agent customarily has taken care of his customer's needs without consulting him. *Pickens v. Texas Farm Bureau Ins. Cos.,* 836 S.W.2d 803, 805 (Tex.App.-Amarillo 1992, no writ) (citing *McCall v. Marshall,* 398 S.W.2d 106, 109 (Tex.1965)).

The Critchfields' claim is comparable to the underlying claim in *Moore.* In that case, Moore repossessed an apartment complex and asked McLain, an insurance agent, to handle the liability insurance for the complex. *Moore,* 966 S.W.2d at 691. Moore thought that the insurance would cover any and all liabilities. Moore did not recall specifically discussing any types of coverage with McLain, and when Moore received the policy, he did not discuss the contents of the policy with McLain. *Id.* Five years later, the manager of the apartment complex terminated an employee who returned to work after suffering a work-related injury. *Id.* The employee filed suit against the apartment complex, and Moore believed that the claim was covered by his liability policy. The insurance company later sent a letter to the apartment complex, informing Moore that

the claim was not covered. Moore then hired his own counsel and settled the suit. *Id.*

Moore filed suit against the insurance company, the agency, and McLain, alleging claims for negligence, breach of contract, fraud, and DTPA and Insurance Code violations. Moore contended that he should have been informed of the provisions of the policy and that McLain never told him what was in the policy. In his deposition, Moore admitted that McLain never told him that the liability policy would cover all lawsuits against him and that he never asked McLain to tell him what the policy covered. After the insurance company was nonsuited, McLain and the agency moved for summary judgment, contending that no one ever represented that Moore was covered for any particular act or conduct and that as a matter of law, no duty existed on the part of McLain or the agency to advise Moore whether or not coverage would be provided under the policy. *Id.* The trial court later ruled in favor of McLain and the agency by rendering a take-nothing summary judgment against Moore. *Id.*

On appeal, the court looked to the Texas Supreme Court's decision in *May* to determine the scope of an insurance agent's common-law duties. *Id.* at 692. The court held that McLain did not breach the duty to use reasonable diligence in attempting to place the requested insurance or the duty to inform the client promptly if unable to do so. In reaching its conclusion, the court noted Moore's admission that he never requested a specific type of coverage and McLain did provide a policy of insurance in accordance with his understanding of Moore's expectations. *Id.* Furthermore, Moore was never " 'led wrongly to believe that [his] policy provided protection against a particular risk that was in fact excluded from the policy's coverage.' "

*Id.* (citing *May*, 844 S.W.2d at 669–70). The court would therefore not extend an agent's liability beyond affirmative misrepresentations to failures to disclose policy coverage limitations. *Id.*

The court in *May* expressed the rationale behind the infeasibility of a cause of action based on the failure to obtain complete insurance protection: "[I]f a breach of due care can be proved without a more concrete showing than a subsequent failure of coverage, agents would be rendered 'blanket insurers.' " *May*, 844 S.W.2d at 671.

▮ In the instant case, the Critchfields maintain that Smith owed them a duty to "disclose certain information to assist [them] in making an informed decision" about their UM/UIM insurance coverage. According to *McCall*, such a duty to disclose information about higher insurance coverage does not exist unless there is evidence of prior dealings where the agent has taken care of his customer's needs without consultation. *Id.* The summary judgment evidence reflects that Mr. Critchfield met with Smith on "multiple occasions" where Smith "provided review, analysis and advice" regarding the Critchfields' insurance needs. Mr. Critchfield's deposition testimony shows that even though he knew that he had $100,000.00 in UM/UIM coverage, he never asked Smith for the $500,000.00 in coverage, never asked whether any coverage was adequate, and never asked for any different types of coverage. He also testified that Smith never told him the maximum amount of coverage he could buy or that $100,000.00 was the maximum amount of UM/UIM coverage he could obtain.

After a thorough review of the record, we have not found any evidence that Smith violated his specific common-law duties to 1) use reasonable diligence in attempting to place the Critchfield's requested insur-

ance, and 2) inform them if he was unable to do so. Furthermore, the Critchfields do not direct us to, nor can we find, any evidence in the record where Smith customarily took care of their insurance needs without consulting them, thereby creating a duty on Smith to extend the Critchfields' insurance coverage. Because no evidence exists that 1) placed a duty on Smith to increase the Critchfields' UM/UIM coverage or 2) raised a genuine issue of material fact demonstrating that Smith violated any common-law duty he owed to the Critchfields, the trial court did not err in granting summary judgment on the Critchfields' common-law negligence claims.

### Negligence Per Se

 The Critchfields also argue that Smith's failure to offer higher UM/UIM limits constituted negligence per se because it was a violation of article 5.06–1 of the Texas Insurance Code. Negligence per se is a concept whereby a legislatively imposed standard of conduct is adopted by courts as defining the conduct of a reasonable and prudent person. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex.1979). In such a case, the jury is not asked to decide whether the defendant acted as a reasonable, prudent person would have acted under the same or similar circumstances. *Id.* The statute itself states what a reasonable, prudent person would have done. *Id.*

Section 3 of article 5.06–1 of the Texas Insurance Code states, in whole, that

[t]he limits of liability for bodily injury, sickness, or disease, including death, shall be offered to the insured in amounts not less than those prescribed in the Texas Motor Vehicle Safety–Responsibility Act and such higher avail-

able limits as may be desired by the insured, but not greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

TEX. INS.CODE ANN. art. 5.06–1(3) (Vernon Supp.2004). Section 1 of article 5.06–1 mandates that the "coverages required under [article 5.06–1] shall not be applicable where any insured named in the policy shall reject the coverage in writing...." TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon Supp.2004).

The contention that an insurance agent owes a statutory duty, based on section three of article 5.06–1, to offer higher limits of UM/UIM coverage was rejected in *Geisler v. Mid–Century Ins. Co.*, 712 S.W.2d 184, 187 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). In *Geisler*, Alfred Geisler died as a result of injuries sustained in an automobile accident. *Id.* at 185. The accident was caused by the negligence of the other driver, and she was covered by a policy with $10,000.00 per person and $20,000.00 per occurrence. After Geisler's wife and child settled for the policy limits with the other driver's insurance company and for $100,000.00 with his employer's automobile insurance company, they sought to collect $100,000.00 in UM/UIM benefits from Mid–Century, Geisler's personal insurer. *Id.*

After the trial court entered a take-nothing judgment in favor of Mid–Century, the Geislers appealed.[3] The stipulated facts demonstrated that Mid–Century had higher UM/UIM coverage available and would have increased coverage had Alfred so requested. *Id.* The facts also showed that there was no evidence to indicate that

---

**3.** The opinion only states that a take-nothing judgment was rendered in favor of Mid–Century; it does not clearly describe the procedural history of the case. Therefore, we as-

sume that Mid–Century moved for summary judgment and the take-nothing judgment was the relief granted by the motion.

Geisler had requested higher limits or that Mid–Century had explained to him that such higher limits were available, and that Mid–Century did not obtain a written rejection of UM/UIM coverage from Geisler. *Id.* at 185–86.

The court noted that under article 5.06–1, Mid–Century had to either provide its insured with at least the statutorily required minimum UM/UIM coverage or obtain a written rejection of UM/UIM coverage. *Id.* at 187. Because Mid–Century complied with the article 5.06–1 requirement of coverage for UM/UIM benefits in at least the statutory minimum, it was not required to obtain a signed rejection of UM/UIM benefits from Alfred. *Id.* Furthermore, Mid–Century had no duty to make an affirmative offer of higher limits of UM/UIM coverage to Geisler. *Id.*

The Critchfields make the same argument as the Geislers did in their case. Because Smith had no duty under article 5.06–1 to offer any higher limits of UM/UIM coverage, the Critchfields negligence per se argument must fail. The Critchfields' first issue is overruled.

### Breach of Contract

In their second issue, the Critchfields maintain that they raised a genuine issue of material fact with regard to their breach of contract claim. Specifically, they contend that they entered an oral contract with Smith where Smith would "fully advise them as to the appropriate amount of insurance coverage that they needed and to procure the amount of coverage that [they] requested." Smith argues that the trial court properly granted summary judgment because the Critchfields failed to produce evidence establishing that a contract existed between Smith and the Critchfields regarding the procurement of additional UM/UIM coverage.

To prove a breach of contract claim, the following elements must be satisfied: 1) a valid contract, 2) the plaintiff performed or tendered performance, 3) the defendant breached the contract, and 4) the plaintiff was damaged as a result of the breach. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex.App.-San Antonio 2002, no pet.). The following elements are required for the formation of a valid and binding contract: 1) an offer, 2) acceptance in strict compliance with the terms of the offer, 3) a meeting of the minds, 4) each party's consent to the terms, and 5) execution and delivery of the contract with the intent that it be mutual and binding. *Wal–Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Consideration is also a fundamental element of every valid contract. *Turner–Bass Assocs. of Tyler v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.-Tyler 1996, no writ). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Id.* "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

In an affidavit attached to their response to Smith's motion for summary judgment, Mr. Critchfield states that Smith offered to provide counsel and advice about obtaining automobile coverages that were necessary and proper for the Critchfields. Mr. Critchfield said that he accepted the offer and paid Smith the premium for his home and automobile coverage, with the understanding that a portion of that premium would represent his fee or commission for Smith's services. He also states that he spoke with or met with Smith on multiple occasions and that

Smith provided review, analysis, and advice pertaining to the Critchfields' automobile insurance needs and appropriate coverages. On more than one occasion, Mr. Critchfield told Smith that he wanted the "maximum coverage" for the UM/UIM portion of his automobile policy. Smith told Mr. Critchfield that the $100,000.00 limit was enough insurance because, in Smith's opinion, Mr. Critchfield had good health insurance coverage. Mr. Critchfield believed that Smith failed to advise, offer, or make Mr. Critchfield aware of the fact that he could purchase UM/UIM coverage in an amount no less than the statutory minimum and as high as the Critchfields' $500,000.00 limit of bodily injury liability coverage. Mr. Critchfield further stated that the agreement "required Mr. Smith to ascertain and provide the appropriate automobile insurance coverages and with regard to underinsured coverage to provide me the maximum coverage [he] was allowed under the policy that Mr. Smith had provided to [him]." In Smith's deposition, he admits that he gauged Mr. Critchfield as someone who was wanting to obtain the maximum coverage he was financially capable of in order to protect his family. Smith also testified that there was a contractual relationship between him and Mr. Critchfield where he provided Mr. Critchfield with insurance advice, counsel, and coverages and that Mr. Critchfield paid him money in the form of commissions from Nationwide.

Based on the summary judgment evidence, and viewing such evidence in a light most favorable to the Critchfields, we find that the Critchfields raised a genuine issue of material fact on each of the elements of a valid oral contract. Smith offered his services to advise the Critchfields on their insurance coverages, and the Critchfields accepted this offer. Smith acknowledged that a contractual relationship existed between him and the Critchfields where

Smith provided insurance advice and counsel. Therefore, a fact issue exists as to whether there was a meeting of the minds and consent to the terms of the contractual relationship. Smith's admission that a contract existed between him and the Critchfields also raises a genuine issue of material fact as to whether the contract was executed with the intent that it be mutual and binding.

■ With regard to consideration, where a policy is issued at the request of an insured, the broker receives consideration and is the agent for the insured, even though the agent is paid with commissions from the insurer. *Williamson*, 932 S.W.2d at 223. Smith admitted receiving consideration from Nationwide as a result of the Critchfields' premium payments. Therefore, a fact issue exists as to whether Smith received consideration from the Critchfields for the insurance services contract. *See Frazer v. Texas Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 821 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (holding that a fact issue existed as to whether insurance agent breached an oral contract when he did not obtain higher UM/UIM coverage). Accordingly, the Critchfields' second issue is sustained.

### BIFURCATION OF LIABILITY AND DAMAGE ISSUES

■ In their third issue, the Critchfields contend that the trial court erred when it ruled, on its own motion, that the liability and damage issues would be tried separately with the same jury. Smith argues that the trial court did not abuse its discretion in electing to proceed with two trials. Smith also contends that the Critchfields failed to preserve error on this issue. We agree.

On June 21, 2002, apparently in response to information received from the

court coordinator that the trial court would be bifurcating the trial, the Critchfields filed a "Motion to Clarify or Reconsider" the trial court's future decision to bifurcate the trial. On June 26, the trial court ordered that the parties would first proceed with a trial on Smith's liability under the negligent misrepresentation, misrepresentation under the DTPA, and breach of fiduciary duty causes of action alleged by the Critchfields. The trial court also ordered that

> ... if the jury finds that Dennis E. Smith breached a duty owed to Plaintiffs under those three causes of action, then the trial shall proceed in which the jury will consider damages suffered by Plaintiffs as a result of the conduct of Dennis E. Smith, in conformance with the jury's findings in the initial phase of the trial.

The Critchfields did not object to this ruling.

In order to present an issue for appellate review, the record must show that a complaint was made to the trial court by a *timely* request, objection, or motion. TEX. R.APP. P. 33.1(a)(1) (emphasis added). The request, objection, or motion must state the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX.R.APP. P. 33.1(a)(1)(A). The trial court must have ruled on the request, objection, or motion, either expressly or implicitly. TEX.R.APP. P. 33.1(a)(2)(A). If the trial court refused to rule, the complaining party must have objected to the refusal. TEX.R.APP. P. 33.1(a)(2)(B).

Premature objections preserve nothing for appellate review. *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 316 (Tex.App.-Texarkana 2003, no pet.). The Critchfields' motion was filed five days before the trial court ordered the bifurcation of liability and damage issues; therefore, the motion was premature. No objections were made following the trial court's order. Accordingly, the Critchfields' failed to properly preserve error on the trial court's bifurcation order. The Critchfields' third issue is overruled.

### CONCLUSION

Smith did not owe the Critchfields either a common-law or statutory duty to offer higher limits of UM/UIM coverage; therefore, Smith cannot be held liable under a negligence or negligence per se theory of recovery. However, the Critchfields produced evidence which establishes a genuine issue of material fact as to whether a contract existed between the Critchfields and Smith where Smith provides insurance counsel and advice. Accordingly, the trial court erroneously granted summary judgment on the Critchfields' breach of contract claim.

Finally, any error the Critchfields could assert with regard to the trial court's order bifurcating the liability and damage issues was waived because the Critchfields failed to properly preserve such error. We therefore *affirm* the portion of the trial court's judgment 1) granting summary judgment on the Critchfields' negligence and negligence per se causes of action and 2) bifurcating the liability and damage issues into two trials heard by the same jury. However, we *reverse* and *remand* the portion of the trial court's grant of summary judgment on the Critchfields' breach of contract claim.