

## NUMBER 13-15-00175-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**DOYLE WELLS, SEA OAT
INVESTMENTS I, L.P.
F/K/A LAMKIN PROPERTIES
LIMITED PARTNERSHIP, AND
QUIXOTE DUNES, INC.,**                                                      **Appellants,**

**v.**

**TEXAS DEPARTMENT OF
TRANSPORTATION AND
TOWN OF SOUTH PADRE ISLAND,**                                 **Appellees.**

On appeal from the 138th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Hinojosa
Memorandum Opinion by Justice Benavides**

By two issues, which we treat as one, appellants Doyle Wells, Sea Oats

Investments I, L.P., formerly known as Lamkin Properties Partnership, and Quixote Dunes, Inc. (collectively "Wells") assert that the trial court erred by granting summary judgment in favor of appellee and cross-appellant the City of South Padre Island, Texas ("SPI") regarding Wells' inverse condemnation lawsuit against SPI.

By one issue on cross appeal, SPI asserts that the trial court erred in denying its motion for summary judgment on its cross-claim to enforce a settlement agreement with Wells.[1]

We reverse and render in part and remand in part.

## I.   BACKGROUND

Wells purportedly owns various properties along Park Road 100 on South Padre Island.   The Texas Department of Transporation (TxDOT) maintains Park Road 100, including keeping the roadway clear of sand.   In 2008, Wells filed suit against SPI and TxDOT alleging that these entities unlawfully took sand from Wells' property located on an easement next to Park Road 100, and transferred the sand to SPI's beaches, which amounted to an unlawful and unconstitutional taking of Wells' property.

SPI denied Wells' allegations by asserting that SPI "merely provided, through a subcontractor, the trucks necessary to transport the sand that TxDOT removed from the [Park Road 100] right of way" by placing the sand on its beaches as part of a beach re-nourishment program.   SPI also filed a traditional motion for summary judgment as well as a no-evidence motion for summary judgment against Wells.

---

[1] Because we sustain SPI's issue on cross-appeal, and because SPI's cross-appeal is dispositive to this appeal, we need not address Wells' issue regarding the trial court's granting of the takings-claim summary judgment in SPI's favor.   *See* TEX. R. APP. P. 47.1.

**A. Takings Claim**

In its traditional motion, SPI alleged that the summary judgment evidence conclusively showed:  (1) no intentional action on SPI's part that resulted in the taking of Wells' property; (2) no causal connection between SPI's actions and the alleged taking; (3) SPI is not a party to the roadway easement in dispute, is more akin to a contractor, and cannot be held to a higher standard than that of a private contractor.  In its no-evidence motion, SPI argued that Wells could not provide any evidence to establish any element of his takings claim.

In response to these motions, Wells filed affidavits and attached exhibits to these affidavits in support of his opposition to SPI's motions for summary judgment. Subsequently, SPI objected to the trial court's consideration of these affidavits on various evidentiary grounds, including that the statements made in the affidavits were not based on personal knowledge, the statements made were conclusory, and some statements constituted hearsay.

On June 30, 2014, after taking SPI's motions for summary judgment under advisement, the trial court sustained SPI's objections to Wells' affidavit and granted SPI's traditional motion for summary judgment.  On the same day it granted summary judgment in favor of SPI, and while the order granting summary judgment remained interlocutory, the trial court ordered all parties (Wells, TxDOT, and SPI) to mediation.

On August 7, 2014, the parties mediated the case, and all parties settled. Specifically, SPI settled with Wells for $10,000, to be paid to Wells' attorney, Larry

3

Polsky's trust account, in exchange for Wells' dismissal of this lawsuit with prejudice.[2] The mediated settlement agreement ("MSA") is signed by Wells, Polsky, and SPI's attorney and was filed with the trial court on September 2, 2014. SPI's attorney testified by affidavit that he tendered a $10,000 check to Polsky's law office pursuant to the MSA.

On September 4, 2014, Wells filed a notice withdrawing his consent to the MSA with SPI and TxDOT because his signature "was not a knowing and willful consent [to the MSA] but the result of undue influence and pressure from my attorney at the time, [Polsky]." Wells further advised the trial court that he had terminated Polsky's services. That same day, Polsky filed a motion to withdraw and also requested that the trial court allow him to impose a lien on Wells' settlement for his services. The trial court subsequently granted Polsky's motion to withdraw.

### B. Mediated Settlement Agreement

On September 25, 2014, SPI filed a counter claim against Wells for breach of contract related to his withdrawal of consent to the MSA. On October 13, 2014, SPI filed a motion for summary judgment to enforce its mediated settlement agreement with Wells. SPI asserted that it conclusively established the elements that Wells breached the settlement agreement. In support of its motion for summary judgment, SPI attached: (1) the August 7, 2014 settlement agreement filed with the trial court; (2) an affidavit from SPI's attorney Paul Y. Cunningham, Jr. that outlined his role and work on this case; (3) a copy of the check paid to Wells' attorney, Polsky, following the mediation; (4) various billing statements from outside counsel retained by SPI for work on this case; (5) copies

---

[2] TxDOT settled with Wells in a separate agreement for $45,000.

of the agreement withdrawals filed by Wells, as well as representatives of Sea Oats Investments I. and Quixote Dunes; and (6) the deposition transcript of Ronald Hitchon, representative of Quixote Dunes.

On November 14, 2014, Wells filed a response to the City's motion for summary judgment by asserting that the contract is unenforceable for a number of reasons, including: (1) the MSA was reached "under the threat of and duress of SPI's Motion to Dismiss, filed immediately prior to the mediation of this matter in August" related to the ownership of the land in question from which the sand was taken; and (2) the MSA does not mention the owner of the subject property, and thus, it lacks all essential and material terms to be an enforceable contract.    In support of this response, Wells attached a copy of the MSA, as well as a post-MSA email exchange between Wells and Polsky regarding a dispute of the ownership of the land and the easements at issue in this case.   Wells also attached an affidavit to his response which stated that he first learned of "TxDOT's" position at the August 7, 2014 mediation that it actually owned the property at issue.[3] Wells further stated in his affidavit that at the time of the mediation, Wells "did not know [Polsky] had a limited knowledge of property law," and "[t]his fact alone would have caused me to not agree to anything."   Wells further asserted that he "did not know what [he] was agreeing to and it would have made a difference . . . at the mediation because [he] would not have signed had [he] known this fact."   Finally, Wells alleged that Polsky "had a vested interest in TxDOT winning their Motion to Dismiss against [him]" because

---

[3] Although Wells' response to SPI's motion for summary judgment asserts that SPI contested ownership of the easements at mediation, Wells' affidavit mentions only TxDOT's position that it owned the property at issue.

5

Polsky worked on an unrelated case that took a similar position as TxDOT.

On March 24, 2015, the trial court denied SPI's motion for summary judgment to enforce the settlement agreement. That same day, the trial court granted SPI's motion to sever Wells' lawsuit against it. This appeal and cross-appeal followed.

## II.    MEDIATED SETTLEMENT AGREEMENT

By its sole issue on cross-appeal, SPI asserts that the trial court erred in denying its summary judgment to enforce its MSA with Wells.

### A.  Standard of Review

We review summary judgments de novo. *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.,* 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex. 2004).

In advancing a traditional motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact, and it is entitled to judgment as a matter of law on the issues expressly presented to the trial court by written motion, answer, or other response. TEX. R. CIV. P. 166a(c).

### B.  Discussion

SPI argues that it established its right to enforce the MSA as a matter of law. We agree.

To prevail on a breach of contract claim, the plaintiff must prove (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the

6

contract; and (4) the plaintiff was damaged as a result of the breach. *Keszler v. Mem. Med. Ctr. of E. Tex.*, 105 S.W.3d 122, 128 (Tex. App.—Corpus Christi 2003, no pet.). In order to form a valid and binding contract, there must be (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied). Lastly, consideration is a fundamental element of a valid enforceable contract. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract.").

Here, SPI produced conclusive evidence to establish a valid contract. The evidence shows a valid and binding mediated settlement agreement between SPI and Wells. In relevant part, the terms of the MSA state that in consideration of $10,000 paid by SPI to Wells within twenty-one days of August 7, 2014, Wells agreed to execute a full and final release and indemnity agreement in SPI's favor, and that Wells will dismiss SPI from its lawsuit against it with prejudice. Furthermore, the MSA states that if it is filed with the trial court clerk, it "shall be enforceable as a Rule 11 Agreement pursuant to Rule 11, Texas Rules of Civil Procedure," but if it is not, it is enforceable pursuant to section 154.071 of the Texas Civil Practice and Remedies Code. *See* TEX. R. CIV. P. 11; TEX. CIV. PRAC. & REM. CODE ANN. § 154.071 (West, Westlaw through 2015 R.S.) (Effect of Written Settlement Agreement). Additionally, the MSA contains a handwritten term that states: "Consideration to be paid to/thru the trust (IOLTA) account of Attorney Larry M. Polsky." Finally, the MSA is signed by Wells, Polsky (as attorney and on behalf of Sea

7

Oats Investments I, L.P. and Quixote Dunes, Inc.), and Cunningham, as SPI's attorney. The MSA was filed with the trial court clerk on September 2, 2014. Thus, the MSA is undisputedly valid and enforceable under rule of civil procedure 11.

However, Wells raised two affirmative defenses to attack the MSA's validity as a matter of law. First, Wells argues that SPI placed ownership of the disputed property at issue in this case, and because the MSA "does not contain a disposition of the ownership of the subject property, an essential term," the contract is unenforceable. We disagree. The record before this Court in this cause is devoid of SPI placing the ownership of the disputed property where the sand was located at issue. Additionally, we note that Wells' affidavit in support of this contention places the ownership issue solely in the hands of TxDOT—not SPI. Accordingly, this argument fails as a matter of law.

Secondly, Wells asserts that due to various failures of its counsel, it did not consent to the terms of the MSA. Again, we disagree. To be sure, in order for a valid contract to exist, each party must consent to the terms of an agreement. *See Critchfield*, 151 S.W.3d at 233. However, in this case, Wells makes conclusory allegations in his affidavit that his attorney had "limited knowledge in property law" and as a result, Wells did not know what he was agreeing to in the MSA. Regardless of validity of such allegations against Polsky, the essential terms in this MSA were simple: SPI agreed to pay Wells $10,000 to end his litigation against it. Nothing in the MSA or the record shows that any issue of property ownership was in dispute at the time the MSA was entered into. Accordingly, this argument also fails as a matter of law.

In addition to proving as a matter of law that a valid contract existed between SPI and Wells, SPI also conclusively established that: (1) it tendered performance by

8

delivering Polsky at $10,000 check within the terms of the MSA; (2) Wells breached the MSA by withdrawing his consent two days after the MSA was filed with the trial court; and (3) SPI suffered damages as a result of Wells' post-mediation rejection of the MSA by having to incur further costs related to this breach. *See Keszler*, 105 S.W.3d at 128. Therefore, we hold that the trial court erred by denying SPI's motion for summary judgment to enforce its MSA with Wells. We sustain SPI's issue on cross-appeal.

### III. CONCLUSION

We reverse the trial court's denial of SPI's motion for summary judgment to enforce its mediated settlement agreement with Wells and render the motion granted. We remand the case to the trial court for further proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Delivered and filed the
2nd day of February, 2017.

9