

NUMBER 13-17-00409-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

REV 2 PROPERTIES, INC. D/B/A
LUSTER INDUSTRIAL SERVICES,                                    Appellant,

v.

SKIP'S RESTAURANT EQUIPMENT, INC.                              Appellee.

---

On appeal from the County Court at Law Number Two (2)
of Victoria County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez, Justices Longoria, and Hinojosa**
**Memorandum Opinion by Justice Longoria**

In the trial court, appellant Rev 2 Properties, Inc., d/b/a Luster Industrial Services (Rev 2) sued appellee Skip's Restaurant Equipment, Inc. (SRS) for breach of contract. A bench trial was held, and the trial court rendered judgment that appellant take nothing on its claim against appellee. By nine issues, Rev 2 contends that the trial court erred by

finding there was no contract between the parties, denying Rev 2's request to make a trial amendment to plead quantum meruit, filing erroneous findings of fact and conclusions of law, and failing to find and submit additional findings of fact and conclusions of law. We affirm.

## I. BACKGROUND

SRS is a restaurant supply business that fabricates products for various customers. On or about June 2013, a piece of metal shearing equipment was not operating properly, and SRS contacted Rev 2 to repair the machine. In Rev 2's live petition, it contended that SRS breached their contract by failing to pay the balance due for the repair work that was done. SRS filed an answer, generally denying the allegations and asserting a counterclaim for false, misleading, and deceptive representations regarding Rev 2's ability to repair the machine and for breach of contract. *See* Tex. Bus. & Com. Code Ann. § 17.46 (West, Westlaw through 2017 1st C.S.).

### A. Bench Trial

#### 1. Testimony of James Luster

James Luster, owner of Rev 2, testified that he had an oral agreement with Bobby Skipper, owner of SRS, regarding the repair of SRS's metal shearing machine. Luster explained that around June 2013 after receiving a call from Skipper, Luster and two of his technicians went to SRS to examine the machine. At that point in time, Luster testified that he was "overwhelmed" with work, but he took the time to visually examine the machine and attempt to assess the problem. Luster testified that he gave an estimate to Skipper that it would take two men each working eighty hours to repair the machine at $125 per hour. He testified further that many of his contracts with smaller shops, such as

2

Skipper's, are oral in nature. After that conversation, Luster testified that they received authorization from Skipper and that Luster's technicians began repairs to the machine. Luster testified that he kept Skipper informed of the progress daily.

Luster stated that, pursuant to a conversation with Skipper on or about the end of July 2013, Luster provided an invoice totaling $18,493.91 for the progress made on the machine. Luster explained that Skipper wanted to review the invoice because it seemed "like a lot." According to Luster, Skipper said he did not want to pay more than what was on the invoice and wanted Rev 2 to stop working on the machine. After this encounter, Luster stated he agreed to lower the hourly rate of his employees to $85 per hour to reduce costs for SRS and further agreed to cap the repair costs at the total amount of the initial invoice and finish the job. Skipper gave Luster a $5,000 check, which Luster stated was for partial payment of parts, with the expectation that the remaining balance would be due when the project was complete.

Luster further testified that upon completion of the project, Skipper requested a week to review his camera footage to verify the times on the invoice, but after a week, Skipper was still not ready to pay his invoice. Because Skipper did not pay the remaining balance, Luster says he presented Skipper with a new invoice, which removed some of the discounted rates and included the additional time it took to complete the project after the initial invoice was presented. The new invoice totaled $21,899.52 after discounting for the $5,000 already paid. Skipper did not pay on the new invoice.

On cross-examination, Luster testified that there was no written memorialization of any estimate, scope of work, or agreement for the work on SRS's machine. Further, during their initial meeting, Luster was unable to provide a total price or the length of time

3

the work would take because they were unsure what problems they would uncover when working on SRS's machine. Luster agreed that the price was "open-ended" as was the scope of work to be done and parts needed, which were dependent on the issues with the machine. As to the timeframe of completion, Luster testified that he could not give a calendar date by which the work would be done.

### 2. Testimony of Bobby Skipper

Skipper testified that he received Rev 2's contact information from another local business operator who had used Rev 2's services. Skipper explained that Luster told him the rates for working on his machine were $125 per hour for Luster's time and $85 per hour for SRS' employee's time. Skipper does not recall a discussion on how long the repairs were expected to take. Skipper also testified, when questioned by his attorney, that there were never any firm agreements regarding price, scope of work, materials to be used, or date of completion for the repair. However, Skipper stated "We had a verbal agreement to work on the machine . . . ." He agreed that the verbal agreement meant that he would pay Rev 2 for the work done on the machine.

Skipper testified that after approximately ten weeks of Rev 2 working on his machine, the machine worked briefly and then failed to operate again. During the ten weeks, Skipper stated he requested a status update and invoice for the work. When Luster presented him with the invoice, he believed it was inaccurate and agreed to pay $5,000 and instructed Rev 2 to cease working. Skipper agreed that he noticed that Rev 2 continued to work on the machine after this encounter. Skipper purchased a new machine after telling Rev 2 to cease working on his current machine because he did not believe the current machine would be repaired.

**B.     Trial Court Ruling**

At the conclusion of the bench trial, the trial court rendered judgment, ordering that, inter alia, (1) [Rev 2] shall take nothing on its breach of contract claim against [SRS] and (2) [SRS] shall take nothing on its DTPA claim against [Rev 2].   Pursuant to Rev 2's request, the trial court also issued findings of fact and conclusions of law.

**1.     Findings of Fact:**

1.     [Rev 2] attempted to repair [SRS's] metal shearing machine.

2.     [SRS] paid [Rev 2] $5,000.00 for work and parts on or about July 31, 2013.

3.     The Court finds that there was no meeting of the minds as to essential terms of the repair work.

4.     The Court finds that, even had an enforceable contract existed between the parties, the evidence of [Rev 2's] hours worked, work performed, and parts and materials used was not sufficient to establish a right to recovery beyond the $5,000.00 already paid by [SRS].

5.     The Court finds that [Rev 2] did not fully or properly repair [SRS's] machine.

6.     The Court finds that no money is now due or owing to [Rev 2] from [SRS].

**2.     Conclusions of Law**

1.     The Court finds that no enforceable contract existed between the parties.

2.     The Court finds that [Rev 2] is not entitled to a recovery from [SRS] in this suit under any theory and shall take nothing on its claims.

3.     The Court finds that [Rev 2] filed no pleadings supporting a claim under the legal theory of quantum meruit.

**C.    Notice of Appeal**

Rev 2 subsequently filed a motion for reconsideration and modification of judgment and a request for additional or amended findings of fact and conclusions of law.  The motions were overruled by operation of law and this appeal followed.

## II.    EXISTENCE OF A VALID CONTRACT

In its first, second, and fifth issues, Rev 2 argues that the trial court erred in denying the original contract existed because there was no evidence to support rejecting its breach of contract claim.  Specifically, Rev 2 contends that the trial erred by:  rendering judgment that Rev 2 take nothing on its breach of contract claim, finding that the contract was unenforceable, and finding that there was no meeting of the minds between the parties.

**A.    Standard of Review**

We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law" issues.  *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 183-84 (Tex. App.—Fort Worth 1995, no writ).  We analyze the issue as a "no-evidence" challenge when the party complaining on appeal did not bear the burden of proof at trial.  *Id*. at 183.  In challenging the legal sufficiency of the evidence to support a finding on which an adverse party bore the burden of proof, the appellant must show the record presents no evidence to support the adverse finding.  *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

When the party complaining on appeal of the legal sufficiency of the evidence to support a finding bore the burden of proof at trial, we address the issue as a "matter-of-law" challenge.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).  If, in reviewing a "matter-of-law" challenge, we conclude that the record presents no

6

evidence to support the finding, we then examine the entire record to determine if a contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied).

In reviewing a legal sufficiency issue, the Court reviews all evidence in the light most favorable to the challenged finding and indulges every reasonable inference in support of that finding. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). A legal sufficiency challenge will be sustained if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence that bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party and disregard the conflicting evidence in its sufficiency review. *Id.* at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id.* at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to make the finding under review. *Id.* at 827.

Unlike legal sufficiency challenges, factual sufficiency issues concede that the

record presents conflicting evidence on an issue. *Maxus*, 766 S.W.2d at 275. Like legal sufficiency challenges, the standard of review on factual sufficiency issues depends on the burden of proof at trial. *Id.* In attacking for factual insufficiency an adverse finding on which it bore the burden of proof at trial, a party must show that the finding is against the "great weight and preponderance of the evidence." *Id.*; *Ritchey v. Crawford*, 734 S.W.2d 85, 86–87 n. 1 (Tex. App.—Houston [1st Dist.] 1987, no writ). In that event, we set aside a finding so against the overwhelming weight of the evidence as to be manifestly unjust and clearly wrong. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

## B.      Applicable Law

To support a breach of contract claim, Rev 2 was required to prove (1) the existence of a valid contract, (2) that Rev 2 performed or tendered performance, (3) that SRS breached the contract, and (4) that Rev 2 was damaged as a result of the breach. *See Critchfield v. Smith,* 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Id.* "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Moreover, appellant was required to prove the following elements underlying the formation of a valid and binding contract: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Critchfield*, 151 S.W.3d at 233. In order for a valid contract to exist, each

8

party must consent to the terms of an agreement. *See id.*

## C. Analysis

Luster and Skipper testified to conflicting terms regarding their oral agreement. The trier of fact, in this case the judge, was free to evaluate the witnesses' credibility and assign weight to their testimony regarding the terms of the oral agreement. *See City of Keller*, 168 S.W.3d at 819. In the instant case, the trial court found that "there was no meeting of the minds as to essential terms of the repair work" and as such, no enforceable contract existed. To be enforceable, a contract must address all of its essential and material terms with "a reasonable degree of certainty and definiteness." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (citing *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 345 (1955)). Under Texas law, material and essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. *Id*.

There was conflicting testimony regarding definite price, completion date, and scope of work to be completed. There was also evidence presented to the court with conflicting pricing reflected in the invoices from Rev 2, which charged varying rates for the same employee with no explanation. The trial court chose to believe Skipper and disbelieve Luster regarding the certainty of the essential terms of the oral agreement. *See City of Keller*, 168 S.W.3d at 821. We do not pass upon the witnesses' credibility, nor do we substitute our judgment for that of the fact finder, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Because it was supported by the evidence and testimony presented, the trial court's findings that there was no meeting of the minds, and therefore no enforceable

contract, was not unreasonable, and we cannot impose our opinion to the contrary. *See id.*; *see also Aguilar v. Hernandez*, No. 13-11-00498-CV, 2012 WL 5187923, at \*3 (Tex. App.—Corpus Christi Oct. 18, 2012, no pet.) (mem. op.).

Rev 2 also argues that Skipper admitted that he had entered into a contract "on numerous occasions." While Rev 2 directs our attention to various portions of the record that he believes support this argument, it does not provide any case law or authorities to explain why these portions of the record would overcome the trial court's finding that there was no meeting of the minds. *See* TEX. R. APP. P. 38.1.

Accordingly, viewing all evidence in the light most favorable to the challenged finding and indulging every reasonable inference in support of that finding, we conclude that the evidence in support of the trial court's finding that there was no meeting of the minds as to the essential terms of the oral agreement is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule Rev 2's first, second, and fifth issues.

**E.    Second Contract**

Rev 2 further argues in its third issue that the trial court erred by not finding that Rev 2 and SRS subsequently entered into an enforceable contract agreement when appellee allowed appellant to continue to work on the machine after appellee was presented with an invoice. The trial court heard testimony from both parties, and again Luster and Skipper had differing accounts of what took place after Luster presented the first invoice. Here, as with the original alleged contract, the trial court was free to evaluate and believe or disbelieve the testimony of either party. *See City of Keller*, 168 S.W.3d at 821. It is within the province of the trier of fact to draw from the testimony whatever

10

inferences they wish, so long as it is not merely a guess.  *Id.*  Therefore, crediting all favorable evidence that the trial court could believe in the light of its ruling and disregarding all contrary evidence except that which could not be ignored, we hold that the evidence supports the trial court's finding.  *Id.*  We overrule Rev 2's third issue.[1]

### III.    QUANTUM MERUIT

By its fourth issue, Rev 2 argues that the trial court erred by denying its motion for a trial amendment to reinstate its pleading of quantum meruit.  Rev 2 also asserts that the trial court erred by denying the admission of deposition testimony relating to "reasonable and usual charges" for the work Rev 2 argues it performed for SRS.

### A.    Standard of Review and Applicable Law

Trial amendments are governed by Rule 66 of the Texas Rules of Civil Procedure, which provides that the court may allow amendments to a pleading and shall do so when the amendment would serve the presentation of the merits without prejudicing the opposing party's action or defense on the merits.  *See* TEX. R. CIV. P. 66.  Under the rule, a trial court has no discretion to refuse a trial amendment unless:  (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment is prejudicial on its face because it asserts a new cause of action or defense, and the opposing party objects to the amendment.  *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 64 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).  Trial amendments that are procedural in nature, such as conforming the pleadings to the evidence introduced during trial, must be allowed.  *Id.*  Substantive amendments or those that change the nature of the trial are

---

[1] Because we conclude that the trial court's finding that there was no meeting of the minds is supported by legally and factually sufficient evidence, we need not address Rev 2's sixth and seventh issues as they are not dispositive.  *See* TEX. R. APP. P. 47.1.

11

discretionary, and the court's decision to allow or deny them may be reversed only if the court clearly abused its discretion. *Id*. A trial court abuses its discretion in denying leave to file a trial amendment in the absence of a showing that the opposing party would be surprised or prejudiced in the maintenance or defense of the action. *Ortale v. City of Rowlett*, 696 S.W.2d 640, 641 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

## B.    Analysis

Rev 2 filed its motion for leave to file a trial amendment on the last day of trial. Rev 2 argues that it had previously pleaded quantum meruit in a prior petition and inadvertently removed the quantum meruit claim when amending its live petition prior to trial. Because quantum meruit had already been pled, Rev 2 argues SRS was aware of the claim and could not have been surprised by the amendment at trial. Rev 2 further argues that because SRS's position was that there was no enforceable contract, SRS should have anticipated a claim for quantum meruit. Conversely, SRS argues that Rev 2 filed several petitions before amending to include the quantum meruit claim. Rev 2 then removed the quantum meruit claim in its live amended pleading before trial, and therefore SRS argues it did not prepare to defend against the claim.

Rev 2's proffered fifth amended petition asserted a claim for quantum meruit in addition to the breach of contract claim. This claim was not pleaded in Rev 2's live pleading, its second fourth amended petition, and therefore was not at issue when trial began. An additional cause of action may not be a new substantive matter if it has common elements with pleaded matters and the evidentiary proof required to support it is the same for an already pleaded cause of action. *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 498–99 (Tex. App.—Dallas 2010, pet. denied). Rev 2 initially pleaded

12

breach of contract, however to recover under a quantum meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018). Commonly, quantum meruit may be pled as an alternate theory of recovery in breach of contract cases, however quantum meruit does not share the same common elements as a breach of contract claim.

We next consider whether SRS could have anticipated the quantum meruit claim. *See Hampden Corp.*, 331 S.W.3d at 499. While it was previously in the pleadings, Rev 2 dropped the claim from its live pleading prior to trial. Furthermore, the evidence presented was specifically relevant to the breach of contract claim and not a claim for quantum meruit. The issue of quantum meruit was not addressed until the last day of trial when Rev 2 brought forth its motion for leave to file a trial amendment and offered deposition testimony from a witness who only testified as to the usual and customary rates and methods of performance in the industry. Accordingly, SRS likely considered the quantum meruit claim dropped and could not have anticipated the claim being raised at the end of the trial. *Id*.

SRS objected to the trial amendment and asserted that the new claim was prejudicial and that it was surprised by it. Specifically, SRS stated "[w]e don't have anybody on the issue of reasonable, ordinary and hourly rates or quantum meruit types

13

of damages, because there's nothing pled and there's nothing in the disclosures to support that as being an issue in the case." Aside from Rev 2's argument that he had previously pleaded quantum meruit and only inadvertently removed the claim, Rev 2 offered no evidence that appellee was not prejudiced.

We conclude the fifth amended petition asserted a new cause of action, was prejudicial on its face, and that SRS timely objected to the amended pleading. *Id*. Accordingly, the trial court did not abuse its discretion in denying Rev 2 leave to file the trial amendment. We overrule Rev 2's fourth issue.[2]

## IV. CONCLUSIONS OF LAW

In its eighth issue, Rev 2 contends that the trial court's conclusions of law were unsupported by the evidence and were "contrary to the undisputed and great weight of the evidence."

## A. Standard of Review

We review a trial court's conclusions of law *de novo*. *Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320, 322 (Tex. App.–El Paso 1995, writ denied). Erroneous conclusions of law are not binding on the appellate court, but, if the controlling findings of fact will support a correct legal theory, are supported by the evidence, and are sufficient to support the judgment, then the adoption of erroneous legal conclusions will not mandate reversal. *Heritage Resources, Inc. v. Hill,* 104 S.W.3d 612, 621 (Tex. App.–El Paso 2003, no pet.); *Quick v. Plastic Sols. of Texas, Inc.*, 270 S.W.3d 173, 181–82 (Tex. App.—El Paso 2008, no pet.).

---

[2] Rev 2 also argues that the trial court erred by not admitting the deposition testimony supporting the quantum meruit claim. Because of our disposition regarding the trial amendment, we need not address this issue. *See* TEX. R. APP. P. 47.1.

14

**B.      Analysis**

Rev 2 does not point to any specific conclusion that it deems erroneous, but rather states conclusively that the trial court's conclusions of law were unsupported by the evidence.  The trial court's conclusions of law were as follows:

1.      The [c]ourt finds that no enforceable contract existed between the parties.

2.      The [c]ourt finds that [Rev 2] is not entitled to a recovery from [SRS] in this suit under any theory and shall take nothing on its claims.

3.      The [c]ourt finds that [Rev 2] filed no pleadings supporting a claim under the legal theory of quantum meruit.

Each of the conclusions of law from the trial court stem from the findings of fact we have already analyzed and concluded were supported by the evidence presented in trial. The supported findings of fact, therefore, provide a basis for the trial court's conclusions of law.  *See Quick*, 270 S.W.3d at 187.  We overrule Rev 2's eighth issue.

## V.      ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

By its ninth issue, Rev 2 argues that the trial court erred by not making, finding, and submitting additional findings of fact and conclusions of law as requested by Rev 2. On this issue, Rev 2 has made no effort to show that the requested findings of fact and conclusions of law were on controlling issues and were thus required to be made. *See Honeywell Intern., Inc. v. Denton Cent. Appraisal Dist.*, 441 S.W.3d 495, 506 (Tex. App.— El Paso 2014, pet. denied).  Additionally, Rev 2 has not shown or attempted to show that it suffered injury or that it was prevented from adequately presenting its complaints on appeal.  *See Tamez v. Tamez*, 822 S.W.2d 688, 692–93 (Tex. App.—Corpus Christi 1991, writ denied).  Accordingly, we overrule Rev 2's ninth issue.

## VI.      MOTION FOR DAMAGES FOR FRIVOLOUS APPEAL

15

SRS has filed a motion for damages for frivolous appeal, arguing that Rev 2's appeal is frivolous and should not have been pursued. Rule 45 of the rules of appellate procedure provides that:

> If the court of appeals determines that an appeal is frivolous it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages.

*Id.* at R. 45. Whether to grant sanctions is a matter of discretion that we exercise with prudence and caution, and only after careful deliberation. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.* If an appellant's argument on appeal fails to convince the court but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *Conseco Fin. Servicing v. Klein Indep. Sch. Dist.*, 78 S.W.3d 666, 677 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Rev 2's appeal does not warrant sanctions. Accordingly, we deny SRS's motion for damages under Rule 45.

## VII.  CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
27th day of December, 2018.

16